IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA LATHAM,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>    Defendants. | No. 2:23-CV-0047-DMC-P<br><br>ORDER |

   Plaintiff, a prisoner proceeding pro se, brought this action in state court. See Amador County Superior Court Case No. 22CV12889. On January 9, 2023, all nine named Defendants removed the case to this Court under 28 U.S.C. § 1441(c). See ECF No. 1, at 1-3. Plaintiff's original complaint now proceeds as a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's removed complaint, ECF No. 1.

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can

be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

Moreover, the Federal Rules of Civil Procedure require that complaints contain a "... short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff Joshua Latham names the following public entity and individuals as defendants: (1) California Department of Corrections and Rehabilitation (CDCR); (2) J. Filipello, a correctional officer at Mule Creek State Prison (MCSP), (3) C. Gipson, affiliation unknown, (4) E. Saxton, a correctional officer at MCSP, (5) P. Covello, a correctional officer at MCSP, (6) B. Holmes, an associate warden at MCSP, (7) D. Mendez, a correctional officer at MCSP, (8) J. Feltner, a correctional officer at MCSP, and (9) B. Stacy, affiliation unknown.[1] See ECF No. 1, at 5-6. Plaintiff alleges staff misconduct, intentional tort, loss of use of property, property damage, and retaliation. See id. at 2, 7, 9-10.

Plaintiff's claims arise out of an alleged conspiracy to confiscate, withhold, and ultimately destroy Plaintiff's property in response to his filing of numerous "602" prison grievance reports. See id. at 10. Specifically, Plaintiff asserts that seven boxes containing his property—ranging from snacks, to electronics, to copies of legal documents—accompanied him

---

[1] Plaintiff also indicates 1 to 5 Doe defendants in his original complaint form. See ECF No. 1, at 6.

2

from the Richard J. Donovan Correctional Facility (RJDCF) to MCSP on August 16, 2021. See id. at 8, 12-13. Plaintiff claims that upon arrival at MCSP, Defendant Saxton only issued Plaintiff his television and CD player with CDs, withholding the rest of the seven boxes until, Plaintiff alleges, Defendant Saxton could review Plaintiff's "602 e-file." See id. at 8, 10. Plaintiff further claims that after filing a 602 grievance against Defendant Saxton for his conduct, Defendant Saxton confiscated Plaintiff's "cleartunes antenna" without cause. See id. Plaintiff asserts that other correctional officers and prison staff, namely, Defendants Holmes, Feltner, and Covello, violated prison property appeal procedures by rejecting Plaintiff's 602 grievances in retaliation. See id.

Plaintiff also alleges that unspecified prison staff—either at RJDCF or MCSP—improperly destroyed four of his seven boxes against prison protocol.[2] See id. at 8-10. Plaintiff claims that Defendant Filipello withheld the surviving three boxes from Plaintiff in retaliation for Plaintiff being unwilling to approve an inventory of his property that Plaintiff claims was "falsified" because it omitted the four destroyed boxes of his belongings. See id. Through two virtually identical affidavits signed by inmates Fernando Franco and Bubba Linton, Plaintiff's complaint further alleges that Defendant Filipello acted aggressively and prevented Plaintiff from collecting his remaining three boxes of property until several days later. See id. at 9, 14-19.[3] Plaintiff finally asserts that Defendant Mendez violated prison property appeal procedures to assist in the destruction of Plaintiff's property. See id. at 9-10.

///
///
///
///

---

[2] In his complaint, Plaintiff frequently cites to various sections of Title 15 of the California Code of Regulations (relating to "Crime Prevention and Corrections"), specifically, sections 3034.7, 3084.9, 3134, 3170, 3171, 3190, 3191, 3193, as well as the California Penal Code at sections 182 and 487. See id. at 8-10.

[3] See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Certain written instruments attached to pleadings may be considered part of the pleading. See Fed.R.Civ.P. 10(c)").

## II.  DISCUSSION

The Court finds that Plaintiff's complaint states potentially cognizable claims against Defendants Saxton and Filipello for retaliation in violation of the First Amendment. As discussed below, however, the Court finds that Plaintiff has failed to allege facts establishing a causal link between any other named defendant and a constitutional violation. The Court further finds that the existence of state law remedies precludes Plaintiff's deprivation of property claims.

### A.  Causal Link and Supervisor Liability

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id. Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may be liable even where such personnel do not overtly participate in the offensive act.  See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).  A supervisory defendant may also be liable where he or she knew of constitutional violations but failed to act to prevent them.  See Taylor, 880 F.2d at 1045; see also Starr v. Baca, 633 F.3d 1191, 1209 (9th Cir. 2011).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Finally, as here with Defendant CDCR, when a state (or one of its agencies) is properly before the Court as an institutional defendant, the causal link between such defendant and the claimed constitutional violation must be the product of an official policy. This so-called "state policy requirement . . . consider[s] 'whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate.'"" Wright v. Serv. Emps. Int'l Union Loc. 503, 48 F.4th 1112, 1121 (9th Cir. 2022) (quoting Ohno v. Yasuma, 723 F.3d 984, 994 (9th Cir. 2013) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982))). This standard of liability is like that for local government entities treated as "persons" under section 1983. See Kirkpatrick v. Cnty. of Washoe, 843 F.3d 784, 793 (9th Cir. 2016) (en banc) ("To [prevail on a claim against a municipal entity for a constitutional violation], a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit.").

In his complaint, Plaintiff sets forth specific facts as to Defendants Saxton and Filipello. Plaintiff specifically alleges that Defendant Saxton improperly withheld Plaintiff's property upon his arrival at MCSP. Plaintiff further claims that Defendant Saxton confiscated his cleartunes antenna without cause in retaliation after Plaintiff filed a "602" prison grievance report. Plaintiff also specifically alleges that Defendant Filipello withheld Plaintiff's property in retaliation after Plaintiff was unwilling to approve an inventory of his property that Plaintiff claims was falsified. Plaintiff further claims that Defendant Filipello violated prison protocol by

acting aggressively and by preventing Plaintiff from accessing his property until several days later. These specific allegations are sufficient to establish a causal link between Defendants' conduct and the alleged constitutional deprivation.

However, Plaintiff's complaint lacks the requisite specificity to put any of the other named defendants on notice and thus fails to establish the causal link necessary under section 1983. First, while Plaintiff formally names Defendants Gipson and Stacy, their names appear nowhere else in the pleading, making a connection between these named defendants and the alleged constitutional deprivation totally absent. Second, while Plaintiff does refer to Defendants Holmes, Feltner, Covello, and Mendez by name in the pleading, Plaintiff only alleges that these defendants improperly rejected Plaintiff's prison grievance reports, and that their indefinite actions in that regard contributed to the withholding and destruction of Plaintiff's property. Mere suggestions of impropriety in connection to the exercise of official functions— such as reviewing and rejecting prison grievance reports—are the very type of "vague and conclusory allegations" that this Court must deem insufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Moreover, as to Defendant Holmes in particular, Plaintiff has not sufficiently stated whether he has been named as a defendant due to his personal participation in the alleged constitutional deprivation, or due to his supervisory position as associate warden at MCSP, in which case Plaintiff has further failed to specify facts sufficient to establish that Defendant Holmes either directed the alleged constitutional violations or knew of the alleged constitutional violations but failed to act to prevent them.

Finally, Plaintiff has failed to specify a causal link between official state policy— here the policies of Defendant CDCR—and the alleged constitutional violation, as required under the state policy requirement. Instead, Plaintiff's complaint does the opposite by frequently and repeatedly citing to various sections of Title 15 of the California Code of Regulations (relating to "Crime Prevention and Corrections"), specifically, sections 3034.7, 3084.9, 3134, 3170, 3171, 3190, 3191, 3193. Indeed, rather than grounding the constitutional violations in Defendant CDCR's allegedly constitutionally defective policies, Plaintiff's complaint alleges that correctional officers violated his constitutional rights by failing to adhere to Defendant CDCR's

prison protocols that amount to otherwise constitutionally sound "rule[s] of conduct imposed by the [S]tate." Wright v. Serv. Emps. Int'l Union Loc. 503, 48 F.4th 1112, 1121 (9th Cir. 2022).

### B. Property Deprivation

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See id.

Where a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. A due process claim is not barred, however, where the deprivation is foreseeable, and the state can therefore be reasonably expected to make pre-deprivation process available. See Zinermon, 494 U.S. at 136-39. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See id. at 128-29.

In his complaint, Plaintiff sets forth sufficient facts to support a legitimate claim of entitlement to his property, with Plaintiff's property interest created and defined by existing rules that stem from California state law. Specifically, Plaintiff alleges that his property did not exceed the combined volume of six cubic feet, a threshold derived from California's prison regulations. See Cal. Code Regs. tit. 15, § 3190(f) ("The combined volume of state-issued and allowable personal property items shall not exceed six cubic feet, except as specifically allowed in these

7

regulations.").

However, Plaintiff cannot sustain a claim based on loss or destruction of property under section 1983 because California provides an adequate post-deprivation remedy for property deprivations. See Mitchell v. Piffer, 2019 WL 1400171, at *2 (E.D. Cal. Mar. 28, 2019) ("California provides an adequate post-deprivation remedy through its Government Claims Act. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994)"); see also Cal. Gov't Code § 844.6(d) ("Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission."). Under this Court's precedents, this rule applies even when the Defendants remove a state court complaint to federal court. See Mitchell v. Piffer, 2019 WL 1400171 (E.D. Cal. Mar. 28, 2019); McKenzie v. Banuelos, 2016 WL 1359841 (E.D. Cal. Apr. 5, 2016).

### C. Retaliation Claims

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

///

///

In his complaint, Plaintiff sets forth sufficient facts to support claims of retaliation as to Defendants Saxton and Filipello. Plaintiff alleges with sufficient particularity that Defendant Saxton took adverse action against him by withholding his property and by confiscating his cleartunes antenna because Plaintiff engaged in protected conduct by filing prison grievance reports—see Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so"). Plaintiff also claims that the adverse action chilled Plaintiff's First Amendment rights by discouraging future grievance reports and that the action cannot be justified by a legitimate penological purpose (Plaintiff's allegations suggest that the confiscation was without cause and that the withholding of property was against prison protocol). Likewise, Plaintiff alleges with sufficient particularity that Defendant Filipello took adverse action against him by withholding his property because Plaintiff engaged in protected conduct by refusing to accept an inventory list that Plaintiff claims was falsified. Plaintiff also claims that the adverse action chilled his First Amendment rights by discouraging further complaint about the destruction of his property, and that the violation did not serve a legitimate purpose as it went against prison protocol.

However, the same cannot be said as to the conduct of the other named defendants. First, Defendants Gipson and Stacy are not mentioned at all—thus precluding consideration of whatever adverse actions they may have taken. Second, Plaintiff has failed to establish a causal link between the alleged actions of Defendants Holmes, Feltner, Covello, and Mendez and the asserted constitutional violations. Accordingly, no adverse action against Plaintiff can be scrutinized to determine whether it was taken because Plaintiff engaged in protected conduct.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

### III.  CONCLUSION

For the above stated reasons, the Court finds that Plaintiff's complaint states potentially cognizable claims against only Defendants Saxton and Filipello, and Plaintiff's complaint against these Defendants for retaliation may proceed.  However, the Court finds that Plaintiff has failed to allege facts establishing a causal link between Defendants Holmes, Feltner, Covello, and Mendez and a constitutional violation, and Plaintiff's complaint against them, and against the CDCR, cannot proceed unless amended.  Plaintiff's due process claim related to property, however, is defective and cannot be cured through amendment.

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable retaliation claims against Defendants Saxton and Filipello, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

/ / /

/ / /

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated: January 30, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE